Locjis L. Friedman, J.
This is a motion made pursuant to section 162 of the General Corporation Law and section 974 of the Civil Practice Act for the appointment of a receiver pendente lite, as well as for a temporary injunction restraining all of the defendants from selling, transferring, assigning or otherwise disposing of any of the assets of three separate entities, except in the ordinary course of the retail business conducted by them. The motion requests further relief restraining the individual defendants from converting to their use and diverting funds and other assets of the said three entities. These entities are two separate corporations and one partnership.
Four causes of action are set forth in the complaint. The first and third are derivative suits against the defendants Alan and Jack Nagelberg, on behalf of the two corporate entities, to wit, Nagel’s Toyland, Inc. and Nagel’s of Kings Highway, Inc. The second cause of action alleges an agreement between the parties and asks for specific performance thereof; while the fourth cause prays for damages for fraud allegedly practised by the individual defendants Al and Jack Nagelberg. The facts leading to the present motion may be summarized as follows:
In October of 1955 plaintiffs Orlan and Nadrich were conducting a manufacturing business. The defendants Jack and Alan Nagelberg at that time ran a toy store on 86th Street. The aforesaid plaintiffs and defendants then agreed to go into business together, planning as their first venture that they would open a store in Long Island which would specialize in toys and *341 sporting goods. Nagelberg was supposed to supply the inventory for the store while the plaintiffs were to build the store fixtures and the working capital was to be made up of contributions supplied equally by all of them. Pursuant to that agreement, they organized a corporation called Nagel’s Toyland, Inc. Bach of the plaintiffs received 25 shares of the Class B stock, while the Nagelbergs each received 25 shares of the Class A stock issued by said corporation. The Nagelbergs were entrusted with the active management and control of the business. The business ran from November, 1955 through the month of July, 1956, when it was ascertained that the business had become unprofitable and the store was closed.
In the meantime, the plaintiff Harold Hershenson, who was related to plaintiff Nadrich, became interested in the business and in April of 1956 purchased a one-third interest in Nagel’s Toyland, Inc., for a stipulated sum. In July, when the Bay Shore store closed, the Nagelbergs suggested that a joint venture be formed and that a chain of stores be operated. Acting on that suggestion, on August 1, 1956 the plaintiffs Nadrich and Orlan, and the Nagelbergs entered into a written agreement by the terms of which two stores were to be leased and opened, one in the Green Acres Development in Valley Stream, New York, and another at 1406-10 Kings Highway, Brooklyn, New York. The agreement also provided that the 86th Street store owned by the Nagelberg partnership was to be transferred to a corporation to be formed, the stock of which was to be equally divided between the parties to said agreement; that the Green Acres store was to be transferred to a corporation to be formed, the stock of which was also to be equally divided between the same parties; and that the Kings Highway store was to be transferred to a corporation to be formed, the stock of which was to be issued 41% to Nadrich and Orlan, 41% to the Nagel-bergs and the balance of 18% to Hershenson.
Two separate corporations were then formed, to wit, A. & J. Nagel’s, Inc., which took over the assets of the 86th Street store and Nagel’s of Kings Highway, Inc., which operated the Kings Highway store.
With respect to the Green Acres store, the defendants Nagel-berg signed a 10-year lease therefor, committing themselves to an obligation for rental in excess of $200,000. Plaintiffs Nad-rich and Orlan, in the agreement of August 1, 1956, had agreed to indemnify the Nagelbergs to the extent of one half of any liability which might exist under the said lease. In February, 1957 the parties to the written contract dated August 1, 1956 decided to abandon the Green Acres store deal. The Nagelbergs *342 charged that it was because Nadrich and Orlan had had a change of heart and had failed to provide the necessary funds to help complete the Green Acres deal that it became necessary to abandon this Green Acres store, and because of that, the plaintiffs decided to step out of the various businesses. Conferences were held during which the Nagelbergs offered to pay $20,500 for the share of Nadrich and Orlan while the latter requested $24,500 in settlement in certain installments. The transaction, however, was to be conditioned upon their procuring a release from the lease in Green Acres and although negotiations were still pending, this suit was instituted.
Plaintiffs now charge the Nagelbergs with various acts of waste, misconduct, misappropriation of funds, self-enrichment at the expense of the corporations and mismanagement of the stores owned by the joint venture. They also charge that there is failure to comply with terms of the agreement. The Nagel-bergs, on the other hand, categorically deny any wrongdoing and claim that no money has been wrongfully taken from any of the businesses except in the ordinary course of the operation thereof.
While this motion was pending and undecided, an application was made to this court for an order to show cause in a motion which would enjoin the defendants forthwith from misappropriating or wasting any of the funds of the corporation. It is alleged that the defendants have been secretly taking merchandise out of the store premises and have in addition been diverting funds. This is a retail business and many small items of merchandise, capable of being easily moved, make up a large part of the inventory of these stores. The court is satisfied that the best interests of all of the parties will be served by appointing a receiver and enjoining the defendants as prayed for in the motion papers. While ordinarily a receiver will not be appointed where the corporation is a going, solvent one, the court does have the power to appoint a receiver in instances such as this.
Since the parties are now operating two stores, a separate receiver will be appointed for each of them and each receiver will be instructed in the order to be entered herein to permit that party to this action who is now operating each of said stores, to continue to operate the same, but under the supervision of said receiver. In short, the receiver will be empowered to employ the party to this action who is now engaged in the operation of each of the stores and permit that party to continue to work therein. In addition thereto, upon the filing of a note of issue herein this action will be preferred for immediate trial. The court suggests that the parties stipulate *343 to try this action before Hon. Mbibb Steinbeink, Special Referee designated by the Appellate Division, Second Department, to try equity and other actions, and if the parties so stipulate, the parties may make arrangements with Hon. Mbibb Steinbeink for a speedy trial.
Settle order on notice.